MICHAEL R. SCOLNICK (MS9984)
**Michael R. Scolnick, P.C.**
175 Burrows Lane
Blauvelt, New York 10913
Telephone: 845-354-9339
Fax: 845-365-1506
*Attorneys for the Plaintiff*

## 08 CIV. 6442

PLAINTIFF DEMANDS
A TRIAL BY JURY

## United States District Court

Southern District of New York

LATASHA BAYNES
          Plaintiff,

    -against-

CITY of NEWBURGH, ERIC PAOLILLI, Chief of the CITY
OF NEWBURGH POLICE DEPARTMENT, P.O."John"
PALERMO(first name being fictitious and unknown to plaintiff)
P.O."Peter" KELLY(first name being fictitious and unknown to
plaintiff) and P.O. THOMAS REYNOLDS

        Defendants,

Civil Action
No_____
COMPLAINT FOR
DAMAGES-
False Arrest; Malicious
Prosecution; Assault;
Battery; Negligence
42 U.S.C. 1981,1983,
1985

## PRELIMINARY STATEMENT

1.    This is an action for monetary damages (compensatory only) against the CITY OF

NEWBURGH, NEW YORK (hereinafter CITY), and (compensatory and punitive) against

ERIC PAOLILLI, Chief of the City of Newburgh Police Department (hereinafter

PAOLILLI), individually and as a supervisory employee of defendant CITY, P.O."John"

PALERMO (hereinafter PALERMO), P.O. "Peter" KELLY (hereinafter KELLY) and P.O.

THOMAS REYNOLDS, (hereinafter REYNOLDS), police officers of defendant CITY,

persons intended being the police officers and/or supervisors who participated in the arrest,

-1-

detention and prosecution of plaintiff, arising out of the false arrest, malicious prosecution, assault, battery, filing of false reports regarding, and false imprisonment of, plaintiff, LATASHA BAYNES.

2.    It is alleged that on August 25, 2007, at approximately 2:10 a.m., officers REYNOLDS, PALERMO and KELLY, of the City of Newburgh Police Department, and CITY OF NEWBURGH, individually, and PAOLILLI, as a supervisory employee of defendantCITY, and as agents, servants and/or employees of defendant CITY, acting in concert, under color of state laws, intentionally and wilfully subjected plaintiff to, *inter alia*, false arrest, false imprisonment, detention, battery, cruel and unusual punishment, an unprovoked, wanton, unjustified and vicious assault and beating, filing of false reports, and malicious prosecution for acts of which plaintiff was innocent.

## JURISDICTION

3.    This action is brought pursuant to 28 U.S.C. Section 1331, 1343, and 1367(a), 42 U.S.C. Sections 1981, 1983 and 1985, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and under the Constitution, statutes and common law of the State of New York. Pendent jurisdiction, pendent party jurisdiction and supplementary jurisdiction over plaintiff's state law claims is asserted.

4.    Venue is laid within the United States District Court for the Southern District of New York in that the defendant CITY is located within, and a substantial part of the events giving rise to the claim occurred within, the boundaries of the Southern District of New York.

-2-

# PARTIES

5.      Plaintiff LATASHA BAYNES was and is a citizen of the United States and at all times relevant hereto resided in the County of Orange, and State of New York.

6.      Defendant CITY was at all times relevant hereto, a municipal corporation, and a subdivision of the State of New York, organized and existing pursuant to the Constitution and the laws of the State of New York.

7.      The City of Newburgh Police Department was at all times relevant hereto, a subdivision, department or agency of Defendant CITY.

8.      The arresting officers, defendants REYNOLDS, PALERMO and KELLY, and defendant PAOLILLI were, at all times relevant hereto, employees of City of Newburgh Police Department duly appointed and acting as police officers in the CITY and were agents, servants and/or employees of defendant CITY, acting in the course and scope of their employment as such and in furtherance of the interests and business of their said employer.

9.      Defendant PAOLILLI is and was, at all times relevant hereto, a supervisory employee of, and an agent, servant and/or employee of Defendant CITY, acting in the course and scope of his employment as such, and in furtherance of the interests and business of his said employer, and otherwise performed and engaged in conduct incidental to the performance of its functions in the course of his duties. PAOLILLI is sued individually and in his supervisory capacity.

10.     At all times mentioned herein, the individual defendants were acting under color of state law,

to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of Defendant CITY and the State of New York.

## NOTICES OF CLAIM

11.  Within 90 days following August 25, 2007, plaintiff filed written Notice of Claim with Defendant .

12.  Within 90 days following the successful termination of the prosecution of plaintiff arising from this incident, plaintiff filed written Notice of Claim with Defendant .

13.  This matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14.  On or about the August 25, 2007, at approximately 02:10AM Plaintiff **LATASHA BAYNES** was on the front porch at the premises known as and located at 170 Lander Street, Newburgh, New York, together with Jackie Hurbin, Nathaniel Hurbin, K.T. Hurbin, April Hurbin, Michael Boone and Victor Harris.

15.  When Victor Harris crossed the street to leave, he was stopped and assaulted by two uniformed officers of the Police Department of the City of Newburgh.

16.  Plaintiff **BAYNES** thereupon went to a point about ten feet from where the assault was happening and began to record it visually with her cell phone.

17.  City of Newburgh Police Officer defendant REYNOLDS approached plaintiff **BAYNES**, and, without reasonable suspicion, probable cause, or ANY legal justification whatever to do so, harassed, threatened, assaulted and battered her, and seized her property, to wit, her

cell phone, and put it in his pocket.

18.     Officer REYNOLDS thereupon  walked over to Michael Boone, who had addressed the

officers assaulting Victor Harris and had consequently been maced and was handcuffed, and

began to assault Boone with a high-voltage stun gun, a so-called Taser.

19.     Plaintiff **BAYNES** asked REYNOLDS why he had to tase a man lying on the ground maced

and cuffed and defendant REYNOLDS responded by saying "You're still being a problem?"

and without reasonable suspicion, probable cause or ANY legal justification whatever to do

so, solely because BAYNES, a black woman, attempted to film his actions and questioned

and spoke out against his actions, attacked BAYNES physically, executing some kind of

unarmed combat move with his legs, whereby he suddenly and most violently swept plaintiff

**BAYNES'** legs out from under her, causing her to fall face first to the ground.

20.     Thereupon, again without reasonable suspicion, probable cause or ANY legal justification

whatever to do so, REYNOLDS tased her in the back.

21.     As plaintiff **BAYNES** rolled over to sit up, REYNOLDS maced her in the face.

22.     As plaintiff **BAYNES**, still seated on the ground, maced, tased, and helpless,  attempted to

"scoot" backwards away from REYNOLDS, REYNOLDS again tased her, this time in her

right hand and then cut the wires from her hand and threw them in the street.

23.     REYNOLDS then commanded **BAYNES** to get to her feet. Plaintiff, an asthmatic, at this

point could not breathe, was stunned, in pain and could not get up. Two other City of

Newburgh Police Officers, defendants PALERMO and KELLY, one each on either side of

plaintiff, grabbed her and began dragging her to the patrol car, causing plaintiff **BAYNES**,

beaten, breathless, stunned, with burning, tearing eyes, in pain, to suffer severe damage to the skin and nails ripped from her toes and bloody feet.

24.    Plaintiff BAYNES was thereafter transported by an officer, in a police vehicle, to the emergency room at St. Luke's Hospital for treatment. REYNOLDS came to where she was located, in the vehicle at the hospital, having previously, during the events hereinabove alleged, taunted and subjected her to repeated ridicule and scornful sexist "fat ass" remarks, now mocked her with the statement "Your fat ass isn't so tough now, is it?"

25.    After allowing inadequate time for claimant to receive her emergency treatment (which was limited, on account of the behavior of the police, to application of neosporin and band-aids), plaintiff **BAYNES** was then wrongfully, unlawfully, unconstitutionally, knowingly and maliciously placed under arrest, and wrongfully, unlawfully, unconstitutionally, knowingly and maliciously transported to a police station, where she remained in custody.

26.    Then, without probable cause, defendants REYNOLDS, PALERMO and KELLY arrested BAYNES for a supposed "obstruction of government administration," "disorderly conduct" and "resisting arrest."

27.    Without reasonable or just cause or suspicion, the agents, servants and/or employees of the CITY, including, but not limited to, defendants REYNOLDS, PALERMO and KELLY did in fact wrongfully, unlawfully, unconstitutionally, knowingly and maliciously single out, harass, gain unlawful possession of the property of, threaten, assault and detain plaintiff LATASHA BAYNES against her will.

28.    Upon information and belief, police officers defendants REYNOLDS, PALERMO and

KELLY , employees of defendant CITY, wrongfully and improperly stopped, detained and arrested plaintiff LATASHA BAYNES in regard to a crime which had nothing to do with plaintiff, or in fact, which they had no probable cause to believe had even been committed.

29.    Upon information and belief, defendants REYNOLDS, PALERMO and KELLY , employees of defendant CITY, with deliberate disregard for proper, lawful, appropriate, correct, and effective investigative behaviors and procedures, stopped, detained, and arrested plaintiff LATASHA BAYNES when it was not right, just, lawful, proper, or necessary to do so.

30.    Upon information and belief, and without proof that plaintiff LATASHA BAYNES was in any way connected or related to a crime, or in fact, that any crime was, in fact, committed, and without reasonable suspicion to stop her, nor probable cause to detain or arrest her, defendant CITY's employees, including defendants REYNOLDS, PALERMO and KELLY, individually and acting in concert, knowingly, unlawfully and wrongfully fabricated a charge against the plaintiff and set it forth in false and fabricated criminal complaints, falsely sworn to by defendant REYNOLDS on August 28, 2007. Copies of the false and fraudulent complaints are annexed hereto as Exhibits A, B, and C and are made a part hereof with the same force and effect as if they were fully set forth here at length.

31.    The criminal complaints, Exhibits A, B, and C were and are false and fraudulent in alleging that plaintiff LATASHA BAYNES committed PL 195.05 obstruction of government administration, PL 240.20 disorderly conduct and PL 205.30 resisting arrest, and in alleging the facts therein set forth alleged to constitute those charges.

32.    Based upon the false criminal complaints prepared, upon information and belief, by the

CITY's employees, defendants REYNOLDS, PALERMO and KELLY, and signed by defendant REYNOLDS, the City of Newburgh Justice Court arraigned plaintiff LATASHA BAYNES on the above charges.

33.    On August 25, 2007, employees of defendant CITY, including REYNOLDS, PALERMO and KELLY, acting in concert, maliciously and with intent to injure plaintiff LATASHA BAYNES, and without just cause or any right to do so, assaulted her, battered her, tasered her, maced her, dragged her, cuffed her and jailed and detained her and restrained her of her liberty, and seized and violated her property, against the will of the plaintiff.

34.    The arrest of the plaintiff by defendants REYNOLDS, PALERMO and KELLY was perpetrated by them without a warrant or other legal process and without probable cause.

35.    Defendants REYNOLDS, PALERMO and KELLY and defendant CITY acted maliciously and intentionally.

36.    Plaintiff was thereupon and thereafter detained and restrained of her liberty and freedom, on account of the unlawful and wrongful acts of the defendants, and was confined in a facility of Defendant CITY, the City of Newburgh Police Department headquarters building.

37.    Eventually, the plaintiff was released from such confinement and detention.

38.    Thereafter the plaintiff was forced to return to court on multiple occasions, over a period of about ten months, appearing in public, and before the public, as a defendant, a person accused of criminal acts, acts of which the plaintiff was not guilty.

39.    The charges against plaintiff LATASHA BAYNES were disposed of, in her favor, by being dismissed, on June 5, 2008 in the City Court of the City of Newburgh in what was referred

to as a "retroactive" adjournment in contemplation of dismissal, but there was no "adjournment" only a "dismissal" as evidenced by the Certificate of Disposition annexed hereto as Exhibit D.

40.     Also annexed hereto, as Exhibit E, and made part hereof, is a copy of the transcript of court proceedings in the Newburgh City Court on June 5, 2008 whereby the Court repeatedly stated in essence, that there was a dismissal, but no "adjournment," and equated that with a jury verdict of "not guilty."

41.     As a direct and proximate result of the acts of the defendants, plaintiff suffered severe and permanent damages including, but not limited to: Violation of her constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to have freedom of speech, to be free from an unreasonable seizure of her person, assault, battery, terrorism, fear for life and person, humiliation, racial discrimination, loss of weight, severe, permanent, physical injury, physical pain, emotional distress and mental anguish, freedom from the use of excessive, unreasonable and unjustified force against a person, freedom from prosecution without just and probable cause, freedom from malice and loss of liberty.

**FIRST COUNT**
(42 U.S.C. SECTIONS 1981, 1983 and 1985 AGAINST INDIVIDUAL DEFENDANTS)

42.     Paragraphs 1 through 41 are incorporated herein by reference.

43.     Defendants REYNOLDS, PALERMO and KELLY acting in concert and under the color of state law, and based on racist motivations, have deprived plaintiff LATASHA BAYNES of her civil, constitutional and statutory rights and have conspired to deprive her of such rights

and are liable to plaintiff under 42 U.S.C. Sections 1981, 1983 and 1985.

44.   As a result, plaintiff LATASHA BAYNES claims damages for the injuries set forth above.

## SECOND COUNT
### (ASSAULT AGAINST INDIVIDUAL DEFENDANTS)

45.   Paragraphs 1 through 44 are incorporated herein by reference.

46.   Upon approaching plaintiff LATASHA BAYNES and assaulting, macing, tasering her and cuffing and arresting her, defendants REYNOLDS, PALERMO and KELLY, acting in concert, made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive touching.

47.   As a result of that assault, plaintiff LATASHA BAYNES claims damages for the injuries set forth above.

## THIRD COUNT
### (BATTERY AGAINST INDIVIDUAL DEFENDANTS )

48.   Paragraphs 1 through 47 are incorporated herein by reference.

49.   Defendants  REYNOLDS, PALERMO and KELLY, acting in concert, placed hands on plaintiff LATASHA BAYNES, tasered her, maced or pepper-sprayed her, dragged her and handcuffed her resulting in the injuries depicted in the seven photographs annexed hereto as Exhibit F and incorporated herein with the same force and effect as though fully set forth at length herein.

50.   As a result of the battery, plaintiff LATASHA BAYNES claims damages for the injuries set forth above, including but not limited to, those so depicted in Exhibit F.

-10-

## FOURTH COUNT
### (MALICIOUS PROSECUTION AGAINST INDIVIDUAL DEFENDANTS)

51. Paragraphs 1 through 50 are incorporated herein by reference.

52. The defendants, REYNOLDS, PALERMO and KELLY acting in concert, knowingly, intentionally, and maliciously caused a false criminal accusatory instrument to be filed against plaintiff LATASHA BAYNES.

53. As a result of the malicious prosecution implemented by defendants REYNOLDS, PALERMO and KELLY plaintiff LATASHA BAYNES claims damages for the injuries set forth above.

## FIFTH COUNT
### (FALSE ARREST & IMPRISONMENT AGAINST INDIVIDUAL DEFENDANTS)

54. Paragraphs 1 through 53 are incorporated herein by reference.

55. Defendants REYNOLDS, PALERMO and KELLY subjected plaintiff LATASHA BAYNES to false arrest, imprisonment, and deprivation of liberty without probable cause.

56. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff LATASHA BAYNES claims damages for the injuries set forth above.

## SIXTH COUNT
### (MUNICIPAL LIABILITY AGAINST DEFENDANT - *RESPONDEAT SUPERIOR*)

57. Paragraphs 1 through 56 are incorporated herein by reference.

58. Defendants CITY and PAOLILLI are liable for the damages suffered by the plaintiff LATASHA BAYNES as a result of the conduct of their agents, servants and employees, under the doctrine of *respondeat superior*.

59.     Defendant CITY, by its agents, servants and employees, subjected plaintiff LATASHA

        BAYNES to false arrest, assault, battery, false imprisonment, malicious prosecution,

        embarrassment, shame and public humiliation.

60.     As a result plaintiff LATASHA BAYNES claims damages against defendants CITY and

        PAOLILLI for the injuries set forth above.


### SEVENTH COUNT
(MUNICIPAL LIABILITY AGAINST DEFENDANT 42 U.S.C. SECTION 1983)

61.     Paragraphs 1 through 60 are incorporated herein by reference.

62.     Defendants CITY and PAOLILLI knew or should have known of their employees',

        agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

63.     Prior to August 25, 2007, defendants CITY and PAOLILLI developed and maintained

        policies and/or customs exhibiting deliberate indifference to the constitutional rights of

        persons in Newburgh, which policies and/or customs caused the violation of plaintiff

        LATASHA BAYNES's rights.

64.     Upon information and belief, it was the policy and/or custom of defendants CITY and

        PAOLILLI to improperly and inadequately investigate citizen complaints of police

        misconduct, and acts of misconduct were instead tolerated by defendant, including, but not

        limited to incidents where defendants REYNOLDS, PALERMO and KELLY and their

        supervisors have in the past falsely arrested individuals without probable cause, improperly

        held and/or detained such individuals without probable cause, and made, and allowed other

        fellow police officers and others of its employees to make, false entries in official police

-12-

department records, and to issue false and fraudulent criminal complaints and accusatory instruments, to cover up and hide their wrongful conduct.

65.    It was the policy and/or custom of defendants CITY and PAOLILLI to fail to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct, thereby failing to adequately discourage further constitutional violations on the part of its police officers. They  did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

66.    As a result of the above described policies and/or customs, police officers of the CITY, subordinates of PAOLILLI, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

67.    The above policies and/or customs demonstrated a deliberate indifference on the part of policymakers of the CITY of Newburgh to the constitutional rights of persons within the CITY of Newburgh, and were the cause of the violations of plaintiff's rights alleged herein.

68.    As a result of the wrongful, deliberately indifferent and illegal acts of defendants CITY and PAOLILLI,  plaintiff LATASHA BAYNES claims damages against those defendants for the injuries set forth above.

### EIGHTH COUNT
(Monell policy and practice claim under §1983)

69.    Plaintiff BAYNES incorporates by reference the allegations set forth in Paragraphs 1

through 68 as if fully set forth herein.

70.   At all times material to this complaint, defendant CITY, acting through its police departments, the City of Newburgh Police Department, had in effect de facto policies, practices, and customs that were a direct and proximate cause of the unconstitutional conduct of defendants PALERMO, KELLY an REYNOLDS.

71.   These policies, practices and customs include, inter alia: the failure to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in improper and unlawful searches and seizures, assault, battery, false imprisonment, malicious prosecution and racial bias, particularly those who are repeatedly accused of such acts; the police code of silence wherein police officers regularly coverup police improper and unlawful searches and seizures, assault, battery, false imprisonment, malicious prosecution and racial bias, by telling false and incomplete stories, inter alia, in testimony, official reports, and in public statements, all of which are designed to cover for and/or falsely exonerate the accused police officers.

72.   On information and belief, defendant CITY and its police department, the City of Newburgh Police Department, failed to effectively screen, hire, train, supervise and discipline its police officers, including the defendant police officers herein, for their propensity for unlawful searches and seizures, assault, battery, false imprisonment, malicious prosecution, for racial bias, particularly with respect to the treatment of African Americans, lack of truthfulness, and for its failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers herein to be in a position to unlawfully search and seize, assault, batter, falsely

-14-

imprison, and maliciously prosecute citizens, including the plaintiff, and/or excessively restrain them and to otherwise cause them injury and violate their federal and state constitutional rights, or to permit these actions to take place with their knowledge or consent.

73.    On information and belief, the defendant police officers herein have been the subject of prior civilian and departmental complaints of misconduct that put, or should have put, the defendant CITY and its police department, the City of Newburgh Police Department, on notice that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.

74.    On information and belief, the defendant CITY, failed to put into place and otherwise maintained an inadequate structure for risk containment and stress management relative to its police officers. Inter alia, the structure was deficient at the time of pre-selection and selection to evaluation and exchange within the command structure about the performance of individual police officers; to the training of supervisory personnel to effectively and adequately evaluate performance of an officer; and to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The net effect of this was to permit police officers of the City of Newburgh Police Department, to function at levels of significant and substantial risk to the public in general and to the minority community in particular.

75.    As a result of the foregoing conscious policies, practices, customs or usages, defendant CITY and its police department, the City of Newburgh Police Department, has permitted

-15-

and allowed for the employment and retention of individuals whose individual circumstances place the public or segments thereof at substantial risk of being the victims of unlawful, humiliating or racially motivated behavior. Such policies, practices, customs or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiff herein.

76.    As a direct and proximate result of the defendants' wrongful policies, practices, customs or usages complained of herein, plaintiff BAYNES has suffered physical and emotional pain, mental anguish and suffering, humiliation and embarrassment.

77.    Plaintiff BAYNES was damaged by defendants' wrongful policies, practices, customs or usages complained of herein.

### NINTH COUNT
(Negligence)

78.    Plaintiff BAYNES incorporates by reference the allegations set forth in Paragraphs 1 through 77 as if fully set forth herein.

79.    By the actions described above, each and all of the defendants, jointly and severally, have committed the following negligent and wrongful acts against plaintiff LATASHA BAYNES, which are tortious under the laws of the State of New York:

a.    Negligence in causing the injury and wrongful arrest and detention of plaintiff BAYNES;

b.    Negligent hiring, screening, supervision and training of defendant police officers and supervisors by defendants CITY, PAOLILLI and their police department, the City of Newburgh Police Department;

-16-

c.     Negligent causation of imminent bodily harm to plaintiff;

d.     Negligent infliction of bodily harm to plaintiff;

e.     Negligent and/or intentional and/or reckless infliction of emotional distress against plaintiff LATASHA BAYNES;

f.     Negligent violation of rights otherwise guaranteed to plaintiff LATASHA BAYNES under the laws and Constitution of the State of New York;

g.     Negligent wrongful prosecution of plaintiff LATASHA BAYNES;

h.     Negligent action in concert by the defendants to commit all of the above acts.

80.     The foregoing acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff LATASHA BAYNES and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

81.     Plaintiff LATASHA BAYNES was damaged by defendants' foregoing acts and conduct which violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York. **WHEREFORE,** plaintiff demands judgment against the defendants, jointly and severally for compensatory damages on each Cause of Action; for punitive damages on each Cause of Action; awarding plaintiff reasonable attorney's fees, costs and disbursements of this action; and granting such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Blauvelt, New York
This 16th day of July, 2008

-17-

**Michael R. Scolnick, P.C.**

By: _____

Michael R. Scolnick          MS9984

Attorneys for plaintiff

175 Burrows Lane,

Blauvelt, New York 10913

Phone: (845) 354-9339

Fax:(845) 365-1506

E-Mail: Scollaw@optonline.net

Newburgh City Court                                    Information/Complaint
City Of Newburgh                                       (sec. 100.05 – 100.50 CPL)
County Of Orange, New York

The People Of The State Of New York                              complaint# LCN070825028895
                vs.
BAYNES, LATASHA R.  (09/13/77 )DOB                    } ss

174 LANDER STREET APT. 2 NEWBURGH NEW YORK 12550

    I, T. REYNOLDS, the Complainant herein, am a police officer of the State Of New York, to wit, a(n) police officer of the City Of Newburgh, New York Police Department, Newburgh, New York.

    I accuse BAYNES, LATASHA R, the Defendant in this action and charge that on or about the 28th day of August, 2007, at 170 LANDER STREET in the City Of Newburgh, County of Orange, New York at about 02:10 o'clock in the forenoon the Defendant did intentionally and unlawfully commit the violation of **DISORDERLY CONDUCT** contrary to the provisions of section 240.20 subdivision 06 of the Penal Law of the State Of New York.

    A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof (6) he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.

    The defendant, BAYNES, LATASHA , at 170 LANDER STREET in the City Of Newburgh, County Of Orange, New York on or about 08/28/07 at 02:10 AM, did intentionally cause public inconvenience, annoyance or alarm , or recklessly create a risk thereof; in that the defendant did congregate with other persons in a public place and refuse to comply with a lawful order of the police to disperse by That the above stated defendant was observed congregating in a public place after a Police involved incident. The stated defendant was given the lawful order of the Police to disperse and refused to do so. As a result of these actions a public inconvenience was had as said action took place on a public street. This information is based on the deponent's direct involvement into this incident.

    ☐  Wherefore I request that a warrant be issued for the arrest of the defendant

Note: False statements made herein are punishable as a class A misdemeanor pursuant to Section 210.45 of the Penal Law.

                                                     Complainant

**POLICE DEPARTMENT**
CITY OF NEWBURGH
55 BROADWAY
NEWBURGH, N.Y. 12550-5608

PL240.20.06 012200

Newburgh City Court
City Of Newburgh
County Of Orange, New York

Information/Complaint
(sec. 100.05 – 100.50 CPL)

The People Of The State Of New York
vs.

BAYNES, LATASHA R.   (09/13/77 )DOB

174 LANDER STREET APT. 2 NEWBURGH NEW YORK 12550

} ss

complaint# *LCN070825028895*

I, T. REYNOLDS, the Complainant herein, am a police officer of the State Of New York, to wit, a(n) police officer of the City Of Newburgh, New York Police Department, Newburgh, New York.

I accuse BAYNES, LATASHA R., the Defendant in this action and charge that on or about the 28th day of August, 2007, at 170 LANDER STREET in the City Of Newburgh, County of Orange, New York at about 02:10 o'clock in the forenoon the Defendant did intentionally and unlawfully commit the class A misdemeanor of RESISTING ARREST contrary to the provisions of section 205.30 of the Penal Law of the State Of New York.

A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.

TO WIT: the above-named defendant, at the above-listed date and time, did intentionally prevent, or attempted to prevent your deponent, a police officer, from affecting the authorized arrest of himself, herself, or another person. Defendant did resist an authorized arrest by: That the above stated defendant did pusher her was into the path of Officer as a lawful arrest was being conducted. Officer attempted to remove the defendant from the area at which time she grabbed the Officers Taser and began to pull away with it. Once the defendant was taken to the ground she again attempted to resist as well as attempting to obstruct the arrest of a second party.

The arrest of Defendant for the violation/crime of Underlying Charge, Penal Law Article 240.20, subdivision 6, was authorized in that That the above stated defendant was observed congregating in a public place after a Police involved incident. The stated defendant was given the lawful order of the Police to disperse and refused to do so. As a result of these actions a public inconvenience was had as said action took place on a public street.

The facts on which this accusation are based upon (check one)
☒ deponent's personal knowledge;
☐ information and belief, the source(s) of that knowledge being the facts contained
    on the attached Supporting Deposition(s) of:

☐ Wherefore I request that a warrant be issued for the arrest of the defendant.

Note: False statements made herein are punishable as a class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Affirmed under penalties of perjury
This 28th day of August, 2007

_____
Deponent

**POLICE DEPARTMENT**
CITY OF NEWBURGH
04 BROADWAY
NEWBURGH, N.Y. 12550-0785

PL205.30 121203

Newburgh City Court                         Information/Complaint
City Of Newburgh                            (sec. 100.05 – 100.50 CPL)
County Of Orange, New York

The People Of The State Of New York                         Complaint# LCN070825028895
            vs.
BAYNES, LATASHA R.  (09/13/77 )DOB                    } ss

174 LANDER STREET NEWBURGH NEW YORK 12550

    I, T. REYNOLDS, the Complainant herein, am a police officer of the State Of New York, to wit, a(n) police officer of the City Of Newburgh, New York Police Department, Newburgh, New York.

    I accuse BAYNES, LATASHA R., the Defendant in this action and charge that on or about the 28th day of August, 2007, at 170 LANDER STREET in the City Of Newburgh, County of Orange, New York at about 02:10 o'clock in the forenoon the defendant did intentionally and unlawfully commit the class A misdemeanor of OBSTRUCTING GOVERNMENTAL ADMINISTRATION 2ND contrary to the provisions of section 195.05 of the Penal Law of the State Of New York.

A person is guilty of obstructing governmental administration in the second degree when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, or by means of interfering, whether or not physical force is involved, with radio, telephone, television, or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

The defendant, BAYNES, LATASHA R., at 170 LANDER STREET in the City Of Newburgh, County Of Orange, New York on or about 08/28/07 at 02:10 AM, did intentionally and unlawfully obstruct, impair or prevent the administration of law or other governmental function or attempt to prevent a public servant, namely T. REYNOLDS, J. PALERMO, P. KELLY, from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television, or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration; in that That the above stated defendant and a large group were observed congregating in a public place after a Police involved incident. As a result of this incident several arrest were being made at the scene. While said arrests were being made the above stated defendant refused to disperse and began to interfear with the arrest of another person. Said defendant did push her was into the path of the stated Officer and had attempted grabbed the Taser from this Officers hand. This information is based ot the deponent's direct involement into this incident.

☐ Wherefore I request that a warrant be issued for the arrest of the defendant.
Note: False statements made herein are punishable as a class A misdemeanor pursuant to Section 210.45 of the Penal Law.

                                  153/416
                            Complainant

CERTIFICATE OF DISPOSITION                    SEC. 380.60 CPL
       STATE OF NEW YORK -NEWBURGH CITY COURT - CRIMINAL DIVISION


                   THE PEOPLE OF THE STATE OF NEW YORK

                              AGAINST

                        LATASHA R. BAYNES AKA
DOCKET #: 07-03197 DATE OF BIRTH:  05-13-1977 SS #:  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
ARREST DATE: 08-25-2007 SENTENCE DATE:    DISPOSITION DATE:  08-25-2007

     The above named defendant having been brought before Hon. B. Harold
Ramsey, Judge of the NEWBURGH CITY COURT, charged with:

PL-195.05        -AM-,  2-OBSTRCT GVRNMNTL ADMN 2ND

PL-205.30        -AM-,  RESISTING ARREST

PL-240.20-06     -V -,  DIS/CON:REFUSING TO MOVE




was thereafter on August 25, 2007 duly disposed of as follows:


ADJOURNMENT  IN  CONTEMPLATION  OF DISMISSAL RETROACTIVE TO 8/25/07. DISMISSED
TODAY (6/5/08). THIS IS NOT AN ADMISSION OF GUILT.


IT IS ADJUDGED THAT SUCH DEFENDANT


_____ Be imprisoned in the Orange County Jail for a term of
        _____

_____ Paid the fine(s) of_____

_____ Received a CONDITIONAL DISCHARGE.

_____ Received an UNCONDITIONAL DISCHARGE.

_____ Received _____ probation under the supervision of
        the Orange County Probation Department.

_____ Pay a Mandatory Surcharge of $.00 and a Crime Victim
        Fee of $.00.

_____ Other:

Dated at the CITY OF NEWBURGH on June 5, 2008

_____  D. Malouf, Ct Asst.  _____
CLERK

1    CITY COURT OF THE STATE OF NEW YORK

2    CITY OF NEWBURGH:   COUNTY OF ORANGE:   PART 1

3    _____x

4    THE PEOPLE OF THE STATE OF NEW YORK,

5                        DOCKET #: 07-03197

6           -against-

7    LATASHA BAYNES,

8                        DEFENDANT.

9    _____x

10                      Newburgh City Court
                        57 Broadway
11                      Newburgh, New York   12550
                        June 5, 2008
12

13             BEFORE THE HONORABLE B. HAROLD RAMSEY,

14                        City Court Judge

15

16   A P P E A R A N C E S:

17   FRANCIS D. PHILLIPS, II, ESQ.,
     Orange County District Attorney
18   BY:  Mr. A.J. Uele, Esq.,
          Assistant District Attorney
19        275 Main Street
          Goshen, New York   10924
20

21   ATTORNEY FOR THE DEFENDANT:
     BY:  Mr. Steven Sherlock, Esq.
22
     ALSO PRESENT:
23   Mr. Baynes
     Eric Shiller, Esq.
24                        JUDITH A. PALAU
                          OFFICIAL COURT REPORTER
25

1               (Whereupon, all parties were present

2      in the judge's chambers.)

3          THE COURT:  Ms. Baynes, I brought you

4      in here because I have to put this on the

5      record.  I have to read something for the

6      record here.  You can close the door.

7          You have the right to be present

8      during this trial and this is a very important

9      right because it permits you to assist your

10     attorney in your defense.  You do understand,

11     however, by your conduct, you can give up this

12     right?  If you don't show up here for trial,

13     for example, you'd be giving up the right to

14     assist your attorney in representing you.

15         And anytime we're out there, when we

16     select the jury and we have a side-bar

17     conference, you have the right to come up to

18     the side-bar conference and participate with

19     your attorney.  However, you can elect to

20     remain at your seat and not come up.

21         Do you understand that?

22         MS. BAYNES:  Yes.

23         THE COURT:  You also understand once

24     this trial starts, if you fail to appear here

25     for the trial, this will constitute a waiver

1    of your right to be present and a warrant

2    could be issued for your arrest and the trial

3    will continue in your absence.

4        If there is a verdict of guilty and

5    you deliberately fail to appear for

6    sentencing, you could be sentenced in

7    absentia.  And upon your arrest, you also

8    could be charged with bail jumping no matter

9    what happens at trial.

10        Do you understand that?

11        MS. BAYNES:  Yes.

12        THE COURT:  Also, if you fail to

13    appear when warranted, the additional charge

14    of bail jumping, that will be separate and

15    apart with what you're charged with now.

16        Now, you have a right to testify and

17    I'm sure you discussed this with your

18    attorney.  And if you request the right to

19    testify and there's a disagreement between you

20    and your attorney, you have the right to talk

21    to us about that.  You have the final say on

22    whether or not you're going to testify.  Your

23    lawyer will make a recommendation to you.

24    It's only that, a recommendation.

25        If you have a disagreement where you

```
 1    want to testify -- put you on trial and you

 2    want to testify, just raise your hand and I'll

 3    call a side-bar conference and we can discuss

 4    it at side-bar; we will not discuss it in

 5    front of the Jury.

 6              Do you understand?

 7              MS. BAYNES:  Yes.

 8              THE COURT:  Do you understand

 9    everything I've read to you?

10              MS. BAYNES:  Yes.

11              MR. SHERLOCK:  Let me go over by my

12    client.  We'll tell you where we stand with

13    that.

14              We have discussed a possibility, as

15    Mr. Uele said, I believe, you would offer the

16    ACD nunc pro tunc.

17              MR. UELE:  Do your notes reflect --

18    was that offered originally on the 14th of

19    January, the retroactive ACD?

20              THE COURT:  January 14th and then

21    February 11th.

22              MR. UELE:  Okay.  I just wanted to

23    nail down the first time just for the notes.

24              THE COURT:  Then the 14th didn't --

25    February 11th.  I don't have it.  I see.
```

1    Failure to appear --

2            MR. UELE:  I want to know the first

3    time it was offered.

4            THE COURT:  There was a failure to

5    appear on the 11th -- 14th --

6            MR. SHERLOCK:  Judge, we have

7    discussed that.  Ms. Baynes has not said she

8    wants to take it at this time.  We discussed

9    it.

10           The one thing I did tell her, that I

11   can also put on the record, I don't mind

12   Mr. Shiller being here.  I would waive any

13   conflict or anything because he was out there

14   a he had this case originally.  I don't know

15   if you need anything further on that.

16           We had talked to Latasha.  I said I

17   didn't know if your Honor would mind putting

18   on the record that there was no admission of

19   guilt with an ACD.  And the other possibility,

20   because she had concerns about future jobs and

21   possible law enforcement, things of that

22   nature, I didn't know whether or not you would

23   do that.  I would ask for a conference but you

24   took us in to read that anyway.

25           THE COURT:  I wanted to read that.  I

1    wanted to make sure we're all on the same

2    page.

3         Ms. Baynes, an ACD -- the case would

4    be taken off the calendar for six months.

5    Okay?  You do not have to appear, your

6    attorney would have to appear.  Once I grant

7    the ACD, in six months pass, the case is

8    automatically dismissed without you

9    reappearing in court or your attorney

10   reappearing in court; it's an automatic

11   dismissal.

12        One of the things about an ACD is,

13   it's like, to see whether or not they're going

14   to be more charges against you.  So long as

15   there's no more charges against you, the

16   dismissal would be automatic.

17        MR. SHERLOCK:  Sorry to interrupt.  In

18   this case they're offering a nunc pro tunc.

19        THE COURT:  It would go back to

20   January.

21        MS. BAYNES:  August.

22        THE COURT:  No, January 14th.  That's

23   when they first heard it.  That's when they

24   first offered it.  They're taking it back to

25   2007.  That means there would be no ACD and

1    the case would be effectively dismissed.

2            Is that what you're offering?

3            MR. UELE:  Yes, nunc pro tunc.

4            THE COURT:  That means this, if you

5    were to accept the ACD today, I would make it

6    retroactive to August 2007 so the case would

7    be dismissed today.  That would be the effect

8    of it; you would have no criminal record.

9    It's not a conviction and that would be the

10    end of the case.

11            MR. SHERLOCK:  I think most

12    importantly there is no admission of guilt.

13            THE COURT:  You don't have to say

14    anything other than your attorney is going to

15    say the People have offered an ACD and that

16    offer is acceptable, and then I will ask you

17    is that acceptable to you.  You're not making

18    an admission.  This cannot be used against you

19    as of today.  If you accept the ACD

20    retroactive back up to August 2007, the case

21    is effectively over and it's dismissed.

22            Do you understand?

23            MS. BAYNES:  Yeah, but I was told

24    something different about an ACD retro.  I was

25    told it starts the date of my arrest which is

1    August 25th.

2         MR. SHERLOCK:  That's what the Judge

3    just stated.

4         THE COURT:  It goes back --

5         MR. SHERLOCK:  He said that, which

6    would make it eight more days -- now the Judge

7    is saying the August date of arrest, it would

8    be over.

9         Could she actually obtain a

10    Certificate of Disposition today?

11         THE COURT:  Yes, if the case is over.

12    It's a dismissal.

13         MS. BAYNES:  So when I apply for

14    corrections again and they ask me have I ever

15    had any arrests, I have to put in writing,

16    word-for-word, what happened to me that night?

17         THE COURT:  No, this is what happens.

18    The arrest remains, that is a fact, an arrest.

19    Okay?  There will be two questions, "Have you

20    ever been arrested?"  "Yes."  "Have you ever

21    been convicted of a crime?"  "No."

22         The arrest will remain no matter what

23    happens today.  The arrest is a fact that will

24    remain.  There is no way of getting around an

25    arrest.

1    MS. BAYNES:  I'm not talking about the

2    arrest.  Are they going to make me put it in

3    writing what happened to me?  Why I got

4    arrested?

5        MR. SHERLOCK:  The Department of

6    Corrections I think she's saying.  The

7    employer.

8        MS. BAYNES:  Yeah.

9        THE COURT:  I don't know.  I can't

10   answer whether or not they're going to ask you

11   what you were arrested for.

12       MR. SHERLOCK:  If they do, I can

13   certainly write a letter that it's an ACD.

14       THE COURT:  You don't have a

15   conviction.  This is not a conviction.  That's

16   what they would be concerned about.

17       MS. BAYNES:  I understand the word

18   "dismissed" better.  Dismissed means it's over

19   with.  Done.

20       THE COURT:  That's what I'm going to

21   say on the record, that this case is dismissed

22   as of today for --

23       MR. BAYNES:  When she's in front of

24   you and you offer and she accepts it --

25       THE COURT:  The People are offering

1      it.

2            MR. BAYNES:  -- doesn't she have to

3      explain?

4            THE COURT:  No, there's no allocution.

5      She doesn't have to say anything other than

6      "yes, I accept this".  There's no -- she

7      understands if she accepts it, she doesn't

8      have to tell me what happened.  That would be

9      an admission.  That would be an allocution.

10     This is different.  All this is is an ACD

11     retroactive back to -- I think it's August

12     7th.

13           MR. SHERLOCK:  The 25th.  It says the

14     28th, but it's the 25th.

15           THE COURT:  What that means is the ACD

16     period has elapsed and this case is dismissed

17     as of today, then a Certificate of Disposition

18     would say the case is dismissed.  That's what

19     it would say.

20           MR. SHERLOCK:  I appreciate you taking

21     the time.  I know that's not -- but since you

22     had us in here anyway.

23           THE COURT:  I have to put this on the

24     record.

25           MS. BAYNES:  I apologize.  I'm not

1    being difficult.

2            MR. SHERLOCK:  You're being fine.

3            MS. BAYNES:  I don't feel like I did

4    nothing wrong.

5            THE COURT:  Remember, the case is

6    dismissed.  I don't see how you could do

7    anything other than a dismissal.  The People

8    are making it retroactive back --

9            MR. BAYNES:  She feels damaged.  She

10   was tazed and maced by police officers on the

11   streets.

12           THE COURT:  I understand that.  You're

13   not going to get that relief here.  This way,

14   even if you go out and this jury says the same

15   thing I'm saying, not guilty, that still --

16           MS. BAYNES:  It all equals the same

17   thing?

18           THE COURT:  Yes.  If the jury were to

19   say "not guilty", it's the same thing.  That's

20   not going to replace the fact you've been

21   arrested.

22           MS. BAYNES:  Okay.  That's all I

23   wanted to hear.

24           THE COURT:  The jury and I are saying

25   the same thing.

1              MS. BAYNES:  But it gets written down

2      differently.  It doesn't get written down ACD

3      retro?

4              MR. SHERLOCK:  Where?  Who is going to

5      write it down?  I don't want to put the judge

6      in a position to answer.  He said -- I can

7      answer that.

8              MS. BAYNES:  If he's willing to

9      answer.

10             THE COURT:  Look, I'm going to say

11     this.  The People have offered an ACD to you.

12     Your attorney is going to say that's

13     acceptable.  I'm going to say to you, "Do you

14     understand the terms and conditions of the

15     ACD?"  Then I'm going to say to you, "Are

16     these terms and conditions acceptable to you?"

17     "Yes".  Then I will say, "This is retroactive

18     from August 25th 2007.  The period has elapsed

19     and this case is dismissed."  That's what I'm

20     going to say.

21             MS. BAYNES:  You're not admitting

22     guilt?

23             THE COURT:  It's not an admission of

24     guilt.  I'll explain to you this is not an

25     admission of guilt.  An ACD is not an

1    admission of guilt.

2         MR. BAYNES:  Are you going to take

3    that?

4         MS. BAYNES:  What he said, it's the

5    same thing.

6         THE COURT:  If the jury came back and

7    said "not guilty" -- if they say sometime next

8    week, it's the same thing as if it's happening

9    today.  It's the same thing, a dismissal.  It

10   is a dismissal.  There's no gradation in terms

11   of dismissals.

12        MR. BAYNES:  No sentence going through

13   this --

14        MR. SHERLOCK:  We can talk about that.

15        MS. BAYNES:  It's worded differently.

16        MR. SHERLOCK:  Let's talk about that

17   outside.

18        MS. BAYNES:  I don't know.  Let's talk

19   about that outside?  You cutting me off?  I

20   don't understand that either.

21        MR. SHERLOCK:  Do you have any other

22   questions for the judge?

23        MS. BAYNES:  I'm going with it now.

24   You're making me feel uncomfortable again.

25   This is my life.

1                  MR. SHERLOCK:  Ask whatever you want.

2                  THE COURT:  Do you have any other

3   questions?

4                  MS. BAYNES:  Is it written down

5   differently?

6                  THE COURT:  When you say "written down

7   differently", in terms of a dismissal?

8                  MS. BAYNES:  If the jury stands up and

9   say "not guilty", it doesn't go on record as

10   ACD retro.  What does it go on record as?

11                 THE COURT:  A dismissal.  It goes on

12   record -- not guilty is a dismissal of the

13   charges.  They're not going to --

14                 MS. BAYNES:  It's worded differently?

15                 THE COURT:  They're not going to say

16   what the police officers did.  All they're

17   going to say is guilty or not guilty.  They

18   don't -- two words they use is not guilty or

19   guilty.

20                 MS. BAYNES:  I understand that.  I

21   just --

22                 MR. BAYNES:  ACD stands for

23   Contemplation of Dismissal.  What's the "A"

24   for?

25                 THE COURT:  Adjournment.  Since the

1    period has already elapsed --

2         MR. BAYNES:  The retroactive --

3         THE COURT:  It's retro from

4    August 25th, 2007.

5         MR. SHERLOCK:  You can walk out of

6    here with a certificate today if the judge

7    ordered that.  You walk out today and it says

8    dismissed.

9         THE COURT:  The Certificate of

10   Disposition will say you have three charges

11   here and it will say they were dismissed.

12        MS. BAYNES:  It would say the same

13   thing as if the jury said not guilty?

14        THE COURT:  It's the same thing.  A

15   dismissal is a dismissal.

16        MS. BAYNES:  I know it's the

17   dismissal.  Would it be worded the same thing?

18   Would it say the same thing?

19        THE COURT:  It would say dismissed.

20   The jury doesn't say dismissal.  They say

21   guilty or not guilty.

22        MS. BAYNES:  I don't know why you're

23   not answering me.

24        MR. SHILLER:  It would say ACD

25   dismissed.  If it's after trial, it says not

1    guilty after trial, dismissed.

2              MS. BAYNES:  It don't say ACD?

3              MR. SHILLER:  The result is what's

4    important.

5              MR. BAYNES:  You know what she's

6    trying to say?  Why can't it just say

7    dismissed?

8              THE COURT:  That's what it will say.

9    It's an ACD.  That period is already over.

10   It's like saying this, last week has already

11   elapsed and the event we're talking about is

12   occurring today.  You make reference to last

13   week but we still, today, are dealing with the

14   situation, the actuality of it.  What happened

15   last week is of no moment; that's a reference

16   point.  An ACD is a reference point.  The

17   dismissal that's occurring today and

18   Certificate of Disposition is what goes into

19   the future, not the ACD.  The dismissal is

20   what goes into the future.  That's what the

21   Certificate of Disposition is.

22             If you were to go apply for a job,

23   that's what they're going to ask you for, a

24   Certificate of Disposition.  They want to know

25   what happened today.  What happened today,

Case 7:08-cv-00442-KMK   Document 1-6   Filed 07/18/2008   Page 17 of 21

1 this case today.

2   The Certificate of Disposition would

3 say all charges were dismissed.  That's what

4 it would say.  That's exactly what the job

5 would require of you to get, a Certificate of

6 Disposition.  It says that the cases were

7 dismissed.  They want to make sure nothing is

8 pending.

9   MS. BAYNES:  So the difference between

10 now and then is the word "ACD" or "dismissal",

11 that's the difference?

12   MR. SHERLOCK:  You're saying

13 dismissed.  I haven't seen one --

14   MR. BAYNES:  An ACD is kind of a

15 probationary period?

16   THE COURT:  No, it would be there --

17 if the People were saying ACD from today

18 forward, then this would be like a period of

19 probation.  They're not saying that.  They're

20 saying the period of probation would be over

21 and the dismissal is today because it's

22 reaching back to the time of arrest.  That's

23 what the effect of it is.

24   MS. BAYNES:  I understand.  All right.

25   MR. SHERLOCK:  Thank you.  Do you have

Case 7:08-cv-06442-KMK    Document 1-6    Filed 07/18/2008    Page 18 of 21

1           anymore questions?

2                 MS. BAYNES:  Thank you for explaining

3           it.

4                 MR. SHERLOCK:  Any questions?

5                 MS. BAYNES:  No.

6                 MR. SHERLOCK:  Could we have five

7           minutes?

8                 MS. BAYNES:  Thank you.

9              (Whereupon, a recess was taken by all

10          parties.)

11               THE COURT:  This is the case of the

12         People of the State of New York versus Latasha

13         Baynes.

14               Mr. Uele, what are we doing with this

15         matter?

16               MR. UELE:  The People's offer today,

17         as it was on January 14th of this year, is an

18         ACD nunc pro tunc.

19               MR. SHERLOCK:  I have discussed this

20         at length with Ms. Baynes and her dad, who is

21         present here today.  She would like to avail

22         herself of that offer with the understanding

23         the ACD is retroactive, as Mr. Uele stated,

24         and it's not an admission of guilt and the

25         case is dismissed as of today.  She would like

1    to accept that.

2            THE COURT:  Ms. Baynes, do you

3    understand the terms and conditions of the

4    ACD?

5            MS. BAYNES:  Yes.

6            THE COURT:  Are the terms and

7    conditions acceptable to you?

8            MS. BAYNES:  Yes.

9            THE COURT:  I'll grant the ACD

10   retroactive back to August 25th, 2007.

11   Effectively that means the case will be

12   dismissed today.  I will grant a Certificate

13   of Disposition.  I'll have the clerk draft it

14   up for you.  If you wait around, we'll give

15   you a copy.

16           MR. SHERLOCK:  Is there a fee on that?

17           THE COURT:  I'll waive the fee.

18           MR. SHERLOCK:  Thank you, your Honor.

19           MR. BAYNES:  This would be a dismissal

20   as if it was a trial by jury?  That's a

21   question --

22           THE COURT:  Yes.

23           MS. BAYNES:  I feel so much better

24   after hearing that.

25           THE COURT:  Certificate of Disposition

1     fee waived.

2          MR. BAYNES:  Is there a chance for me

3     to get a copy of the transcript?

4          THE COURT:  You have to make

5     arrangements with the court reporter.

6          Certificate of Disposition will say as

7     of today the case is dismissed.

8          MR. BAYNES:  It will also mention on

9     the certificate if it were a dismissal by --

10         THE COURT:  No, a Certificate of

11    Disposition -- you have three charges and all

12    three of them will be dismissed.

13         MR. BAYNES:  I just want to make

14    mention she was pretty upset about this

15    because of all the wrongdoing, and it was

16    pretty tough for her to do this; however,

17    she's doing it.  She realizes there's a good

18    chance she might -- could be convicted of

19    something or the other, but we're doing this

20    here just to end this whole process.

21         THE COURT:  Ms. Baynes, good luck to

22    you.  Just wait around and we'll give you a

23    copy of the Certificate of Disposition.

24

25         (Certification on the next page.)

1             *      *      *      *      *

2        CERTIFIED TO BE A TRUE
         AND ACCURATE TRANSCRIPT OF MY
3        STENOGRAPHIC MINUTES TAKEN WITHIN.

4        _____

5        JUDITH A. PALAU
         OFFICIAL COURT REPORTER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INJURY TO 3 TOES FROM BEING DRAGGED

INJURY TO GREAT TOE FROM BEING DRAGGED





TWO TASER MARKS TO BACK

ONE OF TWO TASER MARKS TO BACK





TWO TASER MARKS TO BACK

INJURY TO GREAT TOE FROM BEING DRAGGED





